

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Hon. Gibb Gilchrist
President, Agricultural and
Mechanical College of Texas
College Station, Texas

Dear Sir:                    Opinion No. 0-7068

Re: Method of sale by A. & M. College of
oil, gas, sulphur and other mineral
leases on land owned by the State of
Texas for the use of the college and
its divisions.

We acknowledge receipt of your opinion request asking
certain questions with regard to the leasing of lands under con-
trol of your institution for oil, gas, sulphur and other mineral
purposes, and requesting that the lease form submitted be examined
and corrected.

Enclosed herewith is a new form of lease which we have
prepared for use by your institution in leasing lands under the
provisions of Art. 2613a-3, R. C. S. This is merely a suggested
form. Other provisions not inconsistent with the statute may, in
the discretion of the Board, be inserted; and any of the provis-
ions included in our form may be modified if such modification does
not violate the terms of the statute. We will be glad to pass upon
the legality and effect of any modification or addition that you
deem advisable.

The blank spaces in paragraphs 2 and 3 and 5 of the at-
tached lease form should be filled in prior to advertisement in ac-
cordance with the Board's decisions. In this connection, the maxi-
mum "exploratory" term is five years, but the Board is authorized
to select any shorter term. The minimum royalty is "1/8 of the gross
production of oil, gas, sulphur and other minerals", but the Board
may place any lease on the market at a higher royalty. The minimum
delay rental is One Dollar per acre, but a higher amount may be fixed
by the Board in advance of the advertisement.

The questions asked in your opinion request will be
quoted and answered below in the order in which they appear in your
letter:

"1. Can the Board of Directors of the A. & M. College
delegate to the Business Manager of the College authority
to advertise for sale (by the Board) at public auction, oil,

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable Gibb Gilchrist - Page 2

gas, sulphur and other mineral leases on land under
its exclusive control owned by the State of Texas for
the use of the College and its divisions."

The first paragraph of Sec. 3 of Art. 2613a-3 reads
as follows:

"Sec. 3. Whenever, in the opinion of the Board, there
shall be such a demand for the purchase of oil, gas, sulphur
or other mineral leases on any tract or part of any tract of
land as will reasonably insure an advantageous sale, the
Board shall place such oil, gas, sulphur or other mineral
leases on said land on the market in such tract or tracts, or
any part thereof, as the Board may designate. It shall cause
to be advertised a brief description of the land from which
the oil, gas, sulphur or other minerals is proposed to be
leased. Such advertisement shall be made by inserting in two
or more papers of general circulation in this State and in
addition the Board may, in its discretion, cause said advertise-
ment to be placed in an Oil & Gas Journal published in and out
of the State, and also mail copies of such proposals to the
county judge of the county where said lands are located, and
mail copies of such proposals to such other persons as the Board
might think would be interested therein."

It is a general rule that public duties must be performed
by the body designated by law and that they cannot be delegated to
others. This is particularly true of duties which call for the ex-
ercise of reason or discretion. However, a board may delegate min-
isterial or administrative functions not calling for the exercise
of reason or discretion by appointing agents to perform duties of
that character. 34 Tex. Jur. 459, ("Public Officers", Sec. 79);Horne
Zoological Arena Co. v. City of Dallas, 45 S.W.(2d) 714, (Tex. Civ.
App. 1931)

It will be noted from a reading of the statute quoted
above that reason or discretion is involved in the board's deter-
mination that such a demand exists for the purchase of leases on any
tract of land or part of any tract as will reasonably insure an ad-
vantageous sale. In our opinion, the board cannot delegate this
discretion of determining when any tract or tracts should be placed
on the market for leasing. However, once the Board has made this de-
termination and has determined the manner of publication in accord-
ance with the statute quoted, then the carrying out of these decisions
is merely a ministerial function, which may be delegated. Therefore,
subject to the requirement that the board is to exercise its own dis-
cretion in making all decisions, we answer your question number one
in the affirmative.

Honorable Gibb Gilchrist - Page 3

Question No. 2:

"Can the Board of Directors of the A. & M. College delegate to its President or to the President of the College authority to:

(a) sell at public auction leases on oil, gas, sulphur and other minerals on land under its exclusive control owned by the State of Texas for the use of the College and its divisions,

(b) determine that a satisfactory bid has been received and make an award to the bidder offering the highest price,

(c) reject all other bids, and

(d) execute a lease on the approved form in favor of the bidder offering the highest price?"

The second paragraph of Sec. 2, Article 2613a-3, provides in part as follows:

"The Board may sell the lease or leases to the highest bidder at public auction at the Agricultural and Mechanical College of Texas, College Station, Texas, at any hour between 10:00 a. m. and 5:00 p.m.  The Board shall have the right to reject all bids."

Sec. 5 of the same article provides in part as follows:

"If in the opinion of the Board any one of the bidders shall have offered a reasonable and proper price for any tract and not less than the price fixed by the Board, the lands advertised may be leased for oil, gas, sulphur and/or other mineral purposes under the terms of this Act, and such regulations as the Board may prescribe, not inconsistent with the provisions of this Act."

Sec. 6 of the same article provides in part as follows:

"If the Board shall determine that a satisfactory bid has been received for said oil, gas, sulphur and/or other mineral lands it shall accept the same and reject all other bids and file said accepted bid in the General Land Office."

Subparagraph (a) of Sec. 7 of the same article provides as follows:

"If the Board shall determine that a satisfactory bid has been received for said oil, gas, sulphur and/or other minerals, it will make an award to the bidder offering the highest price therefor, and a lease shall be filed in the General Land Office."

Honorable Gibb Gilchrist - Page 4

The general rule with regard to delegation of duties by public officers is stated under question 1 above. Likewise it is an elementary rule of the law of agency that, in the absence of either express or implied authority, the powers entrusted to an agent cannot be delegated, and this rule is particularly applicable when the exercise of the power conferred involves discretion. 2 Tex. Jur. 471 ("Agency", Sec. 76)

In the case of Horne Zoological Arena Co. v. City of Dallas, supra, it was held that the City Park Board could not delegate to the Director of Parks the power to make contracts for the purchase of animals, the court stating in its opinion that such a board cannot delegate to others the discharge of duties which call for reason or discretion, and which are regarded as a part of the public trust assumed by the members of the board.

The above quoted provisions of the statute in question clearly contemplate that the discretion involved in selling leases, determining what bid is satisfactory, and rejecting other bids shall be exercised by the Board, and in our opinion the Board has no authority to delegate the exercise of that discretion to the President. We therefore answer your question No. 2 in the negative.

Question No. 3:

"If the answer to the above questions is in the negative, can the auction be held without the Board of Directors being in session?

"If so, can the auctioneer say 'sold' or can bids be accepted only subject to the approval of the Board of Directors and the sale be declared 'closed' subject to such approval?"

Section 1 of Art. 2613a-3 reads in part as follows:

"Sec. 1. That the Board of Directors of the Agricultural and Mechanical College of Texas is hereby authorized and empowered to lease for oil and/or gas and/or sulphur and/or other mineral development to the highest bidder at public auction all lands used for experimental stations and all other lands under its exclusive control or any part thereof now owned by the State of Texas and acquired for the use of the Agricultural and Mechanical College of Texas and its divisions or that may hereafter be acquired for the use of the Agricultural and Mechanical College of Texas and its divisions."

The second paragraph of Sec. 7 of the same article reads as follows:

"Sec. 3.  The Board may sell the lease or leases to
the highest bidder at public auction at the Agricultural
and Mechanical College of Texas, College Station, Texas,
at any hour between 10:00 a.m. and 5:00 p.m.  The Board
shall have the right to reject all bids.  However, the
highest bidder shall pay to the Board on the day of the
sale twenty-five per cent (25%) of the bonus bid and the
balance of the bid shall be paid to the Board within twenty-
four (24) hours after being notified that the bid has been
accepted.  Payments shall be paid in cash, certified check
or cashier's check, as the Board may direct; provided, the
failure to pay the balance of the amount bid will forfeit to
the Board the Twenty-five per cent (25%) paid."

Sec. 5 of the same article reads in part as follows:

"Sec. 5.  If in the opinion of the Board any one of the
bidders shall have offered a reasonable and proper price for
any tract and not less than the price fixed by the Board,
the lands advertised may be leased for oil, gas, sulphur and/
or other mineral purposes under the terms of this Act, and
such regulations as the Board may prescribe, not inconsistent
with the provisions of this Act.  In the event no bid is ac-
cepted by the Board at public auction any subsequent procedure
for the sale of oil and/or gas and/or sulphur and/or other
mineral leases shall be in the manner above provided."

It is apparent from the above provisions of the statute
that the method of sale is by public auction but that the Board
shall have the right to reject all bids and is not required to ac-
cept a bid that is not satisfactory to the Board.  In our opinion,
however, from the language quoted, the Legislature in enacting this
statute did not contemplate that an auctioneer should determine
the acceptability of the highest bid and close the sale.  Since the
statute gives to the Board the discretion of determining whether
any one of the bidders has offered a "reasonable and proper price"
and whether it is a "satisfactory bid", and since it further gives
the Board the right to reject all bids, the Legislature must have
contemplated that the Board would consider the bids and within a
reasonable time make its decisions thereon.  From the qualifications
stated, it is apparent that the Legislature did not intend a "pub-
lic auction" in the ordinary sense of that term.  The requirement
stated in Sec. 3 quoted above that the highest bidder shall pay to
the Board on the day of sale 25% of the bonus bid and the balance
of the bid shall be paid to the Board within 24 hours after being
notified that the bid has been accepted indicate that some lapse
of time was contemplated between taking the bids and the Board's
decision as to whether the highest bid should be accepted.

We find no requirement in the statute, either express
or by necessary implication, that the Board is required to be in
session at the time bids are received, and since the receiving of

Honorable Gibb Gilchrist - Page 6

the bids without taking any action thereon would be a mere ministerial act not involving discretion, we see no objection to the Board's delegating this function.

Therefore, in answer to your question No. 3, it is our opinion that the auction can be held without the Board of Directors being in session; but that the auctioneer cannot say "sold" and that bids can be accepted only subject to the approval of the Board of Directors. In this connection it is further our opinion that the person designated by the Board to receive bids shall perform the ministerial function of determining the highest bonus bid and so informing the bidders in order that the highest bidder may pay to the Board 25% of the bonus bid on the day of the sale in accordance with the statute.

Question No. 4:

"Can there be more than one variable in the (1) bonus, (2) royalty and (3) delayed rental payments or must all but one be fixed by the Board of Directors in advance of the advertisement with a minimum fixed by said Board for the variable."

Sec. 4 of the statute in question reads as follows:

"Sec. 4. A separate bid shall be made for each tract or subdivision thereof. No bids shall be accepted which offer a royalty of less than one-eighth (1/8th) of the gross production of oil, gas, sulphur and other minerals in the land bid upon and this minimum royalty may be increased at the discretion of the Board. Every bid shall carry the obligation to pay an amount not less than One Dollar ($1.00) per acre for delay in drilling or development; such amount to be fixed by the Board in advance of the advertisement and shall be paid every year for five (5) years unless in the meantime production in paying quantities is had upon the land or said land is re-leased by the lessee."

It will be noted that the above provision specifically requires that the delay rental be fixed by the Board in advance of the advertising. As to the royalty, the statute fixes a minimum of one-eighth of the gross production, but provides that this "minimum royalty may be increased at the discretion of the Board."

In Texas an oil and gas lease amounts to a grant of a determinable fee estate in the oil and gas in place. That is, if the lease provides for a one-eighth royalty, it is a conveyance of an undivided seven-eighths interest in the oil and gas in place, subject to reversion. Therefore, if the royalty were left indefinite so that bidders could bid on royalties, the estate or interest in the minerals offered for sale would be indefinite, and the bidders

418

would not be offering to buy the same interest. For example, if one person bid one-eighth royalty, and another bid one-fourth royalty, then under our theory of ownership of oil and gas, the former would be offering to buy an undivided seven-eighths interest, whereas the latter would be offering to buy an undivided three-fourths interest. In our opinion bids of this character were not contemplated by the Legislature. In addition, the phrases "25% of the bonus bid" and "a reasonable and proper price" would seem to contemplate cash bonus bids only.

Therefore, in answer to your question No. 4, it is our opinion that both the delay rental payment and the royalty must be fixed by the Board of Directors in advance of the advertising, and that the bonus bid is the only variable permitted under the statute.

Question No. 5:

"How many days in advance of the auction sale should the notice of the sale be published?"

The statute does not provide how many days in advance of the auction sale the notice of sale should be published. Sec. 5 of the Article, quoted under your question No. 1, provides that the advertisements shall be made by inserting same in two or more papers of general circulation in this State and, in the Board's discretion, in an oil and gas journal, and by mailing copies to the county judge, and such other persons as the Board might think would be interested. Apparently the Legislature did not consider time to be "of the essence", and in our opinion the statutory requirement is met when the advertisements shall have been inserted in two or more papers of general circulation in this State. When this requirement is met, the length of time as well as any additional publicity to be given the sale are matters within the discretion of the Board of Directors.

Trusting that the above satisfactorily answers your questions, we are

Yours very truly,

ATTORNEY GENERAL OF TEXAS

By: Raymond A. Lynch
Raymond A. Lynch
Assistant

PL:RAL:djm

